**Gerald BRAYTON**

v.

**MONSON PUBLIC SCHOOLS, et al.**

**Civil Action No. 95–30051–MAP.**

United States District Court,
D. Massachusetts.

Jan. 17, 1997.

Frederick A. Hurst, Hurst & Hurst, Springfield, MA, for Plaintiff.

Leonard H. Kesten, Kurt B. Fliegauf, Brody, Hardoon, Perkins & Kesten, Boston, MA, John J. Davis, Todd M. Reed, Morrison, Mahoney & Miller, Boston, MA, for Defendants.

### MEMORANDUM REGARDING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

PONSOR, District Judge.

### I. INTRODUCTION

In the fall of 1994, the plaintiff, an industrial arts teacher at Monson Junior–Senior High School, was suspended and eventually terminated from his extra-curricular position as coach of the varsity soccer team. The defendants took this action, according to plaintiff's complaint, because the plaintiff made comments to a newspaper reporter suggesting that the team's recent poor performance could best be characterized by the word "coward."

Plaintiff has now sued the Monson Public Schools, the members of the School Committee, the Superintendent of Schools, and the school principal, claiming that his termination violated his First and Fourteenth Amendment rights. He has also alleged common law defamation and breach of contract.

Defendants have moved to dismiss the complaint on the grounds, first, that the allegations contained within its four corners fail to state a cause of action for any violation of

the Constitution, and, second, that all defendants are protected by the doctrine of qualified immunity.

This motion was referred to Magistrate Judge Neiman, who issued a Report and Recommendation on June 21, 1996, to the effect that the motion to dismiss should be allowed as to the members of the School Committee individually and the principal. In all other respects, the Magistrate Judge recommended that the motion be denied. The Report and Recommendation concluded, as to the remaining defendants, that the existing. pleadings "while hardly picture perfect" were generally sufficient to survive a challenge under Fed.R.Civ.P. 12(b)(6). Report and Recommendation at 12.

For the reasons set forth below, the court will adopt the Report and Recommendation, in part, and dismiss the complaint as to the individual members of the School Committee and the principal. The court will, however, decline to adopt the recommendation that the motion be denied as to the remaining defendants. The complaint, even. read with the generosity accorded pleadings at this stage, simply fails to state any viable constitutional cause of action. The court will therefore allow the motion to dismiss as to *all* defendants. Given the absence of any constitutional claim, the court will dismiss the state law claims in Counts II and III without prejudice to their refiling in state court, based on *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## II. FACTS

In assessing the adequacy of the factual allegations, this court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The plaintiff began work for the Monson Public Schools in September of 1967 as an industrial arts teacher for grades 7 through 12. In 1969, after having worked as a junior varsity coach and interim varsity coach, plaintiff became the "official permanent Varsity Coach" of the high school soccer team. Complaint at ¶¶ 15–17. For the following twenty-six years plaintiff coached the team, achieving a fine record of 327 victories against 94 losses, with several league and Western Massachusetts championships and one state championship. *Id.* at ¶ 20.

The school's soccer team during the 1994–95 season did not perform well, winning the first two games of the season, then losing four of the next six games. Complaint at ¶ 22.

Plaintiff tried to work with the players regarding what the complaint characterized as their "psychological difficulties that caused them to shy away from frontal confrontation and contact." As a result, their playing briefly improved. Complaint at ¶¶ 27–28.

During a subsequent game, however, the complaint states that "team members lost control of the ball by backing down and turning away from physical confrontation and generally gave less than their best effort and lost the game." Complaint at ¶ 29.

In an interview following the game, a reporter asked plaintiff what single word would describe the team's efforts. The plaintiff then stated that the best term to describe the team's efforts would be the word "coward." *Id.* at ¶¶ 30–33.

These comments were subsequently reported in the newspaper and caused consternation on the part of the parents and school officials in Monson.

After publication of plaintiff's remarks the defendant school principal, Michael J. Kane, temporarily suspended plaintiff from his coaching job, with pay, for embarrassing the soccer players. Complaint at ¶ 38. Kane took this action upon the instruction of the Superintendent of Schools, defendant V. Vincent Carbone.

Following his suspension, plaintiff visited a doctor, who diagnosed severe stress and recommended that plaintiff remain away from work one to two weeks. Nevertheless, plaintiff returned to his teaching job after two days. *Id.* at ¶¶ 41–42.

Plaintiff alleges, without details, that the superintendent's action in ordering his suspension reflected a "personal grudge." *Id.* at ¶¶ 44–46.

On October 20, 1994, the plaintiff appeared at a grievance hearing convened by Superintendent Carbone. Although the outcome of the hearing is not specified in the complaint, plaintiff alleges that after the hearing Carbone informed plaintiff by letter dated October 21, 1994 that he would be suspended for the remainder of the school year as soccer coach, but would be considered for reinstatement to his coaching position for the following year "if he met several conditions." *Id.* at ¶ 48.

No copy of the October 21, 1994 letter is appended to the complaint, but plaintiff alleges in conclusory terms that the conditions proposed in it violated his constitutional rights to speak and associate. Moreover, plaintiff alleges that as a penalty, the suspension was out of proportion to his actions. Plaintiff claims that the suspension was not in accordance with existing rules and regulations of the school and therefore violated due process. *Id.* at ¶¶ 49–53.

Without going into details, plaintiff alleges that he "did not accept all of the conditions contained in his October 21, 1994 letter." *Id.* at ¶ 54. Instead, plaintiff made a counterproposal, which was rejected by the School Committee. As a result, plaintiff was permanently terminated from his position as varsity soccer coach. On appeal, the School Committee upheld the termination. *Id.* at ¶¶ 55–62. Plaintiff has not coached the team since.

Based upon the alleged violations of his First and Fourteenth Amendment rights, evidenced according to plaintiff by the facts summarized above, plaintiff is seeking damages against all defendants under 42 U.S.C. § 1983.

## III. DISCUSSION

It is true that a claim under a civil rights statute is not subject to any enhanced pleadings standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Romero–Bar-*

*celo v. Hernandez–Agosto,* 75 F.3d 23, 35 (1st Cir.1996). Nevertheless, *Leatherman* does not exempt § 1983 cases from normal pleading requirements which "though minimal, are not non-existent." *Id.* at 28 n. 2. The deficiencies in plaintiff's complaint do not arise from any failure of specificity in his factual allegations, but from the insufficiency of those allegations as support for any constitutional claim.

Indeed, it is somewhat difficult to distill from the complaint exactly what constitutional theories are supported by which particular facts alleged. The problem is complicated by the inclusion in plaintiff's memorandum opposing the motion to dismiss of additional facts (*e.g.,* references to plaintiff's appearance on a talk show), which do not appear in the complaint.

Holding the complaint up at the best possible angle, the court can discern potential constitutional claims in three areas. First plaintiff appears to assert that his "coward" comment enjoyed First Amendment protection. Second, plaintiff appears to assert that his suspension and eventual termination as the soccer coach was carried out in a manner which violated his due process rights. Third, plaintiff appears to allege that the conditions proposed in the October 21, 1994 letter as prerequisites to his reinstatement the following year as the varsity soccer coach violated his right of free association and his right to freedom of speech under the First Amendment.

Plaintiff's first possible claim—that he was unconstitutionally disciplined for his use of the word "coward"—dies at the feet of the Supreme Court's decision in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Even before *Connick,* it was clear that a public employee's right to speak was not limitless. In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court sought "a balance between the interests of the [employee], as a citizen, in commenting upon *matters of public concern* and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Id.* at 568, 88 S.Ct. at 1735. (Emphasis supplied.)

The *Connick* decision sought to define further the kind of speech that might be considered of "public concern." Justice White in *Connick* stated:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Id.* at 146–47, 103 S.Ct. at 1690.

While plaintiff's characterization of his team members as (in essence) cowards might, in a general sense, be considered a matter of concern, or at least interest, to some members of the Monson community, this remark does not remotely satisfy the requirement of "public concern" as set down in the applicable case law. Courts have limited "public concern" to information needed to enable citizens to make informed decisions about the operation of their government, needed to disclose misconduct or needed to generate public debate on some issue of significant public interest. *O'Connor v. Steeves,* 994 F.2d 905, 913 (1st Cir.1993), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993). In the *Connick* analysis, the fact that the topic of the employee's speech might have generated some interest "is of little moment." *Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir. 1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). The *Connick* and *O'Connor* decisions make it clear that the First Amendment did not prohibit these defendants from disciplining plaintiff for his "coward" remark, because this expression simply did not rise to a level protected by the First Amendment.

Plaintiff's claim for violation of due process fares no better. In order to claim a denial of procedural due process, plaintiff must allege facts sufficient to justify the court, faced with a motion to dismiss, in concluding, first, that he has alleged a deprivation of an interest which implicates life, liberty or property rights and, second, that the denial occurred without due process of law. *Brown v. Hot, Sexy & Safer Productions, Inc.,* 68 F.3d 525, 534 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996), *citing Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).

■ As a threshold matter, it is doubtful that plaintiff possessed any constitutionally protected right in his position as an extracurricular soccer coach. Plaintiff's termination as coach has not affected his position as a teacher, and his right to continued employment in the soccer program is not alleged to have been the subject of any statute or contract. As the Supreme Court has recently stated, "absent contractual, statutory or constitutional restriction, the government is entitled to terminate [government employees] for no reason at all." *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr,* —— U.S. ——, ——, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996). Given that plaintiff had no reasonable basis for an expectation of continued employment as a soccer coach, the court cannot discern what constitutionally protected liberty or property interest is alleged here.

■ Equally important, even assuming some cognizable deprivation occurred, the complaint lacks any factual averments suggesting that plaintiff received less than the process he was due. The complaint itself substantiates that plaintiff was given notice of the charges against him and had an opportunity to be heard by the decision-maker before his termination was final. In sum, given the absence of *any* factual allegations suggesting the existence of a constitutionally protected right, and the absence of any suggestion that plaintiff received less than the process due him, even if such an interest was implicated, the complaint is insufficient to

state a claim under the Fourteenth Amendment's procedural due process clause.

■ Finally, plaintiff alleges that his First Amendment rights were violated by the proposed conditions contained the October 21, 1994 letter as prerequisites for his reinstatement the following year as the varsity coach.

Plaintiff's contentions in this area are extremely artfully pled. The complaint does not attach the letter; nor does it quote from it. The complaint simply states that the conditions described in the letter would have "required that Mr. Brayton not speak to people to whom he otherwise had a constitutional right to speak" or to "associate with people whom he otherwise had a constitutional right to associate." Complaint at ¶¶ 49–50.

Defendants' opposition to plaintiff's Motion to Dismiss attaches the actual letter. While certainly the letter was unfortunate in tone (asserting that the conditions described were "non-negotiable" and demanding a response within forty-eight hours, for example), from a constitutional point of view its contents had far less significance than plaintiff's complaint implied. With regard to plaintiff's speech, for example, the letter merely proposed that during his period of temporary suspension plaintiff was not to "communicate with coaches and/or players, regarding *soccer*. (T)his does not prohibit contact regarding other areas, e.g., academics; . . . ." (Emphasis in original.) As far as any alleged violation of associational rights, the letter proposed only that during the period of his suspension the plaintiff would not "participate in or attend games, practices, awards programs, or any other activities" related to the soccer program.

The Supreme Court has recently reaffirmed that even the provisional property rights of an independent contractor may not be infringed in retaliation for the exercise of free speech. *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr,* —— U.S. ——, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). *Umbehr,* however, involved speech related to a matter of public concern. Here, as the court has noted above, plaintiff's communications regarding soccer would have no such public significance. Moreover, the associational rights alleged by the plaintiff do not involve the sort of highly intimate relationships that are afforded constitutional protection. *See e.g. Roberts v. United States Jaycees,* 468 U.S. 609, 619–20, 104 S.Ct. 3244, 3249–51, 82 L.Ed.2d 462 (1984).

To recap, even viewing the complaint generously, and imposing no pleading requirement beyond the sort that obtains in every civil case, the allegations contained within the four corners of the complaint simply cannot be construed to state a claim for relief under 42 U.S.C. § 1983.

■ Beyond this, even if a constitutional violation were properly alleged, all of the individual defendants would be entitled to the protection of qualified immunity. Public officials performing discretionary functions are shielded from liability for their actions, provided their conduct violates no clearly established statutory or constitutional right of which the official reasonably should have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court's inquiry must focus "not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Singer v. State of Maine,* 49 F.3d 837, 845 (1st Cir. 1995). The qualified immunity defense provides ample room for "erroneous decisions" and "mistaken judgments." *Wood v. Clemons,* 89 F.3d 922, 931 n. 9 (1st Cir.1996).

Here no decisional or statutory law would have remotely suggested to any of the defendants that in October of 1994 they were violating the plaintiff's constitutional rights by suspending him following his comments about the soccer team, or by terminating him upon his refusal to accept what they regarded as reasonable conditions for his reinstatement.

## IV.  CONCLUSION

This has been, obviously, a most unhappy episode. Plaintiff was Monson's varsity soccer coach for more than twenty-five years, indisputably revered and respected by many team members, past and present. An ill-advised remark, made when plaintiff was still (as he put it) "hot" following a team loss, understandably caused great distress and

concern. At the same time, the sequence of events that followed could certainly have been handled with greater sensitivity and compassion. Plaintiff's "hot" remark was sadly balanced by the rather aggressive tone of the October 21, 1994 letter from defendants' previous counsel.

Cooler heads could not prevail, and the suit was filed. Though some might say that the punishment meted out to plaintiff was disproportionate to his offense, this was a judgment to be made by the responsible officials. This court's task is to determine whether their conduct, as alleged in the complaint, could possibly be found to have violated any of plaintiff's constitutional rights. It did not. For this reason, the Magistrate Judge's Report and Recommendation is ADOPTED, but only in part. The defendants' Motion to Dismiss Count I of the complaint is ALLOWED, *in toto.* Counts II and III, being based purely on state law, are hereby DISMISSED as a matter of discretion without prejudice to plaintiff's right to refile them in state court. The clerk will enter judgment for the defendants.