Jeffrey A. VICKOWSKI, Plaintiff,

v.

Dennis HUKOWICZ, individually, and in his official capacity as Chief of Police for the Town of Hadley Police Department; Glenn E. Clark, in his official capacity as Chairman of the Board of Selectmen for the Town of Hadley; and The Town of Hadley, Defendants.

No. Civ.A. 97–30252–MAP.

United States District Court, D. Massachusetts.

March 13, 2002.

Joan A. Antonino, Charles J. DiMare, Antonino & DiMare, Amherst, MA, for Jeffrey A. Vickowski, plaintiff.

Joseph L. Tehan, Jr., Kopelman & Paige, P.C., Boston, MA, Katharine I. Goree, Kopelman & Paige, Boston, MA, for Dennis Hukowicz, Glenn E. Clark, Town of Hadley, defendant.

*MEMORANDUM REGARDING RE-PORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 77)*

PONSOR, District Judge.

## I. *INTRODUCTION*

In this case, the plaintiff, Jeffrey A. Vickowski ("plaintiff"), a former police officer in the Town of Hadley, brought suit against the Town of Hadley ("Hadley"), Chief of Police Dennis Hukowicz ("Chief Hukowicz"), and the Chairman of the Hadley Board of Selectmen (the "Board"), Glenn E. Clark ("Clark"), alleging that he was both retaliated against, and discriminated against, in violation of the Equal Protection Clause and the First Amendment of the United States Constitution. Plaintiff claimed, in essence, that he suffered disparate treatment and eventual termination because he filed a grievance in 1989 and a lawsuit in 1990 against defendants.

Defendants filed a motion for summary judgment, arguing in essence that plaintiff's contentions, even if accepted, described little more than a garden variety employment dispute, not a matter of "public concern" worthy of constitutional protection. Defendants' motion was referred to Magistrate Judge Kenneth P. Neiman, who agreed with defendants and issued a Report and Recommendation to the effect that the motion should be allowed. That Report and Recommendation is attached as Exhibit A.

Plaintiff has filed an objection to the Report and Recommendation. Since this court's *de novo* review reveals that Magistrate Judge Neiman's analysis was correct, the court will adopt his recommendation and allow defendants' motion.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

The factual background and prior proceedings are clearly laid out in Magistrate Judge Neiman's Report and Recommendation at pages 2–7, and need not be repeated here. However, since the pivotal issue in this case is whether plaintiff's activities touched upon a matter of "public concern," and were therefore protected by the First Amendment, a few words regard-

ing the facts relevant to that issue are necessary.

Plaintiff's 1989 Notice of Claim and his 1990 Complaint (Docket 69, Exhibits I and J) reveal that plaintiff charged the Town of Hadley, Chief Hukowicz, and three members of the Board with various violations of the federal and state constitutions, and of state law. As is explained more fully in the Report and Recommendation, plaintiff was disciplined and suspended for two weeks without pay for removing two stereo speakers from the Hadley Police Department garage. The facts surrounding this discipline were made public. Plaintiff appealed the discipline and suspension to the Board, but in the end was only offered one week of back pay. He thereafter filed a lawsuit, which was eventually settled for $21,000.

In the 1989 Notice of Claim and the 1990 Complaint, plaintiff contended that the Board's decision to discipline him, and its subsequent public disclosure of its action, violated his constitutional rights to due process, privacy, and freedom of expression. The Notice of Claim and Complaint, additionally, charged Chief Hukowicz and the Board with misconduct in violation of state law and plaintiff's state and federal constitutional rights. Following the settlement of the 1990 lawsuit, Vickowski alleges he was harassed and eventually terminated in retaliation for his grievance and lawsuit. This retaliation, plaintiff contends, violated his right to petition the government for redress under the First Amendment.

## III. DISCUSSION

■ In order to proceed with this civil rights claim, as Magistrate Judge Neiman noted, plaintiff must show as a threshold matter that his 1989 Notice of Claim or 1990 lawsuit touched on a matter of "public concern." The seminal case in this area is

the Supreme Court's decision in *Pickering v. Board of Education*, 391 U.S. 563, 569, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As the Court later noted, *Pickering* reflected "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The Court has since explained that "the government as employer has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Id.*, at 675, 114 S.Ct. 1878.

■ The Court's concern about proper government functioning limits a plaintiff's rights under both the petition and speech clauses of the First Amendment. As Magistrate Judge Neiman noted, the Court of Appeals made it clear in *Boyle v. Burke*, 925 F.2d 497 (1st Cir.1991), that the petition clause, like the speech clause, requires an employee's legal grievance to touch on a matter of "public concern" before it can form the basis for a civil rights suit. *Id.* at 505.

■ Plaintiff argues, in essence, that his 1989 grievance and 1990 lawsuit touched on matters of public concern for two reasons. First, they alleged violations of the federal constitution. Second, they accused public officials of malfeasance.

■ The first argument flies in the face of existing law. The very point of the "public concern" requirement is to protect against the "attempt to constitutionalize [an] employee grievance...." *Connick*, 461 U.S. at 154, 103 S.Ct. 1684. If merely filing a § 1983 lawsuit against a govern-

ment official were sufficient to constitute speech on a matter of public concern, the "public concern" requirement would largely evaporate. As the Supreme Court has noted, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146, 103 S.Ct. 1684. This latitude does not disappear simply because a public official is accused of constitutional wrongdoing.

Plaintiff's second argument, that his grievances touched on matters of public concern because they accused public officials of malfeasance, derives from the First Circuit's decision in *O'Connor v. Steeves,* 994 F.2d 905 (1st Cir.1993). The plaintiff in *O'Connor* criticized one member of the local Board of Selectmen for "purchasing goods for personal use through [a government] account, which was not subject to the 5% Massachusetts sales tax." *Id.* at 908. The First Circuit held that these "revelations directly implicated a topic of concern to the community—official misconduct by an incumbent elected official." *Id.* at 915. The *O'Connor* plaintiff's speech had a "direct bearing" on a local official's "fitness for elective office." *Id.* Plaintiff argues that in the same way, his grievances articulated "official misconduct" by public officials that had a "direct bearing" on the "fitness" of those officials for "public office."

This comparison must be rejected. Any governmental employee who files a § 1983 suit against an elected official may, of course, argue that the alleged constitutional violation constituted "official misconduct" and showed that the supervisor was not "fit for public office." In this case, however, plaintiff's grievances, though wrapped in constitutional clothing, were based upon matters of personal concern.

■ Plaintiff complained, at bottom, that the way Hadley officials handled *his own* discipline and suspension was unfair. While this complaint may or may not have had merit, the basis of the complaint was a personal grievance; plaintiff did not believe that he should have been suspended, and he did not believe the discipline should have been made public. But, in a case like this, an employee's speech can form the basis of a civil rights suit only "when the employee spoke '*as a citizen* upon matters of public concern' rather than '*as an employee* upon matters only of personal interest.'" *United States v. National Treasury Employees Union,* 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (emphasis in original), *quoting Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Here, without question, plaintiff spoke "as an employee" upon a matter only of personal interest. *See Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 78–79 (1st Cir.2000) (noting public comment that mayor failed to comply with regulations by not publicly announcing new projects and respective budget allotments was "easily distinguishable from self-serving statements that promote a personal interest.").

■ A final matter should be noted. Government employee speech or litigation not touching on matters of public concern does not always—necessarily or automatically—fall entirely outside the purview of the First Amendment. *Connick,* 461 U.S. at 147, 103 S.Ct. 1684; *O'Connor,* 994 F.2d at 912. The requirement that such activity touch on matters of public concern is properly considered a jurisprudential guideline; in "the most unusual circumstances," a federal court may be "the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." 461 U.S. at 147, 103 S.Ct. 1684.

This is not such a case. To permit this action to go forward would simply throw open the doors of the court to garden variety employment disputes, effectively "constitutionalizing" them simply because the employer was a public entity.

In summary, plaintiff's 1989 Notice of Claim and 1990 lawsuit did not constitute First Amendment activity "touching upon a matter of public concern." *Connick*, 461 U.S. at 147, 103 S.Ct. 1684. The motion for summary judgment as to Count 1 must therefore be allowed. For the reasons articulated by Magistrate Judge Neiman in his Report and Recommendation, the motion for summary judgment as to Counts 2 and 3 will also be allowed.

### IV. *CONCLUSION*

For the reasons set forth above, defendants' motion for summary judgment is hereby ALLOWED as to all Counts. The clerk will enter judgment for the defendants.

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying memorandum, the Report and Recommendation of Magistrate Judge Neiman, upon *de novo* review, is hereby ADOPTED. The defendants' motion for summary judgment (Docket No. 66) is hereby ALLOWED on all counts. The clerk will enter judgment for the defendants.

It is So Ordered.

### REPORT AND RECOMMENDATION WITH REGARD TO DEFEN- DANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 66)

NEIMAN, United States Magistrate Judge.

#### October 12, 2001

Jeffrey A. Vickowski ("Plaintiff"), a former police officer in the Town of Hadley ("Hadley"), brings this action alleging that the three defendants—Hadley, Chief Police Dennis Hukowicz ("Hukowicz") and the Chairman of the Hadley Board of Selectmen ("Board"), Glenn E. Clark ("Clark"), in his official capacity only, (collectively "Defendants")—retaliated and discriminated against him in violation of his civil rights when they failed to reappoint him to the police force in 1995. Defendants have moved for summary judgment and the motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons indicated below, the court will recommend that Defendants' motions allowed.

### I. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment pursuant to FED.R.CIV.P. 56(c) if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue. *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). A "genuine" issue is one "that a reasonable jury could resolve . . . in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). *Accord United States v. One Parcel of Real Property, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 204 (1st Cir.1992).

Not every genuine factual conflict, however, necessitates a trial. " 'It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared.' " *Parrilla–Burgos v. Hernan-*

*dez–Rivera,* 108 F.3d 445, 448 (1st Cir. 1997) (quoting *Martinez v. Colon,* 54 F.3d 980, 983–84 (1st Cir.1995)). At bottom, matters of law are for the court to decide at summary judgment. *Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996).

## II. FACTUAL BACKGROUND

The background is sketched in a light most favorable to Plaintiff, the party opposing summary judgment. *See Sullivan v. Raytheon Co.,* 262 F.3d 41, 46 (1st Cir. 2001). Even so, uncontroverted material facts of record set forth by Defendants are deemed to be admitted. *See* Fed.R.Civ.P. 56; Local Rule 56.1

Plaintiff was employed by the Hadley police department from 1981 through June 30, 1995, first as a dispatcher and then, from October of 1984, as a patrolman-police officer. Hukowicz has been a Hadley police officer since 1974. In 1980, Hukowicz became a sergeant, in 1987 he was promoted to lieutenant, in 1988 he became acting chief of police and then, in 1993, chief of police. Huckowicz was chief when Plaintiff was not reappointed in 1995. As described more fully in the court's discussion below, Plaintiff and Hukowicz had a contentious relationship throughout the 1980s and 1990s.

In addition to his police department responsibilities, Plaintiff ran a military surplus store. In the summer of 1988, two of Plaintiff's employees who were Hadley Police Explorers (an organization described as being similar to a Boy Scout Unit) informed Plaintiff that the police department had "donated" speakers to the Explorers which it had confiscated from an illegal sale. Plaintiff agreed to buy the speakers, in exchange for $100 in store goods, and the youths directed Plaintiff to pick up the speakers at the police department garage. Subsequently, a dispatcher observed Plaintiff rummaging through boxes in the garage and informed Hukowicz that Plaintiff had taken the speakers. Shortly thereafter, Plaintiff was suspended without pay.

On August 28, 1988, Plaintiff and his attorney met with Hukowicz and the Board in executive session. The Board expressed its concern that Plaintiff had violated police department rules and offered him only one week of back pay. Plaintiff and his attorney, alleging that a lieutenant had promised full reimbursement, argued that Plaintiff was entitled to back pay for the entire period of his suspension. Ultimately, it appears that the disciplinary action was upheld.

Dissatisfied, Plaintiff filed a notice of claim on January 28, 1989, pursuant to the Massachusetts Tort Claims Act ("MTCA"), MASS.GEN.L. CH. 258, et seq. One year later, on January 16, 1990, Plaintiff, still upset, filed a lawsuit against Hukowicz and the Board of Selectmen. Plaintiff complained that the Board of Selectmen defamed him and invaded his privacy by disclosing the disciplinary action and other personal information to the public and press. Plaintiff further alleged that Hukowicz in particular had "engaged in a campaign of retaliation, threats, intimidation and harassment" ever since he filed his MTCA notice. (See Docket No. 69: Defendants' Exhibits, Exhibit J ¶ 41.)[1] Plaintiff also claimed that Hukowicz and the Board of Selectmen had violated his

---

1. Specifically, Plaintiff claimed that the following acts were retaliatory:
 1) denial of extra patrol details; 2) repeated harassment; 3) solicitation of complaints against the plaintiff; 4) reprimands without just cause and in the presence of others; 5) slanderous comments; and 6) other acts of intimidation designed to prevent the plaintiff from continuing in the employment in the Town of Hadley. (*Id.* ¶ 42.)

right to due process by suspending him without pay and that Hukowicz and other town officials had thereby breached a contract or, at least, an implied contract. Finally, Plaintiff asserted that Hadley was liable for the actions of its officials under the MTCA and 42 U.S.C. § 1983. As redress, Plaintiff sought "appropriate compensatory damages from the defendants jointly and severally," "punitive damages from defendant Hukowicz," and fees. (*Id.* at 12.)

The parties settled the lawsuit in November of 1990. In exchange for $22,000, Plaintiff signed a release which stated that the settlement was "the compromise of a doubtful and disputed claim . . . and . . . is not to be construed as an admission of liability on the part of the persons or entities hereby released, by whom liability is expressly denied." (*Id.*, Exhibit K.) Hukowicz now claims that he did not know of the settlement until shortly after it had occurred. Even so, Plaintiff alleges that, after the lawsuit was filed, his encounters with Hukowicz intensified and that Hukowicz began taking the position that the legal action was unjustified. In particular, Plaintiff asserts that, after he filed the lawsuit in 1990 and into 1995, Hukowicz subjected him to "constant, repeated and daily harassment." (Docket Nos. 72 and 73: Plaintiff's Local Rule 56.1 Statement and Exhibits ("Plaintiff's Exhibits") ¶ 5.)

In 1995, Plaintiff's union and the police department executed a new collective bargaining agreement which dictated a reduction in the number of part-time police officers.[2] Carrying out his responsibilities under the agreement, Hukowicz decided not to recommend Plaintiff and two other part-time police officers for reappointment. As a result, Plaintiff was notified on July 28, 1995, that his term of appointment would expire in two days.

In determining which officers to recommend, Hukowicz purportedly "did an overview" of all of the part-timers, including Plaintiff. (Defendants' Exhibits, Exhibit E at 20.) According to Hukowicz, he considered each officer's qualifications, continued interest in the department, the length of time he had worked for the department, whether he could continue to work, and whether he had the time to devote to the department. Hukowicz also claims that he utilized his own best memory regarding each officer's desire to work. In this litigation, Hukowicz continues to offer similarly innocuous reasons for his decision not to recommend Plaintiff for reappointment.

III. *Procedural Background*

Plaintiff filed this action in 1997.[3] On June 19, 1998, this court recommended that Defendants' Rule 12(b)(6) motion to dismiss the complaint be denied, which recommendation was adopted by District

---

**2.** The expressed purpose of the agreement was to prevent losing union employees and to allow special officers to be hired. In reviewing the agreement for the Board of Selectmen, Clark—a member of Hadley's Board of Selectmen from 1993 to 1996—concurred that if a reduction of force or lay-off were to occur, it must be done by seniority. Charles Bray, the union steward and himself a former Hadley police officer, confirmed the seniority requirement and advised Hukowicz that those part-time officers who had not worked should not be reappointed. One requirement of the collective bargaining agreement was that

part-time employees who were laid off would be placed on the recall list for three years.

**3.** The complaint initially set forth the following three counts: (1) "UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, THE DECLARATION OF RIGHTS OF THE MASSACHUSETTS CONSTITUTION AND 42 U.S.C. § 1983"; (2) "CONSPIRACY TO VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS"; and (3) "MUNICIPAL LIABILITY IN VIOLATION OF 42 U.S.C. § 1983."

Judge Michael A. Ponsor on July 29, 1998. Still, Plaintiff amended his complaint on July 24, 2000. Like the original complaint, the amended complaint has three counts, although the counts now differ somewhat. Count I still alleges "unlawful retaliation" in violation of the First Amendment, the Declaration of Rights of the Massachusetts Constitution, Mass.Gen.L. ch. 12, § 11, and 42 U.S.C. § 1983. Count II now alleges violations of the Equal Protection Clause of the United States Constitution "and similar provisions of the Declaration of Rights of the Massachusetts Constitution." Count III continues to allege "municipal liability" in violation of 42 U.S.C. § 1983.

Following several discovery skirmishes, Defendants answered the amended complaint and then filed the instant motion for summary judgment. In due course, Plaintiff filed his opposition. Having considered the parties' written and oral arguments and the three volumes of exhibits, the court is now poised to offer its recommendation.

## IV. DISCUSSION

In addressing Defendants' motion, the court, as have the parties, will track the complaint's three counts. In doing so, the court will first address the constitutional claims, Counts I and II.

4. In pertinent part, section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

## A. COUNTS I AND II

■ As indicated, Count I alleges "unlawful retaliation" in violation of Plaintiff's First Amendment rights while Count II alleges violation of the United States and Massachusetts constitutions' guarantees of equal protection. As the parties are well aware, 42 U.S.C. § 1983 ("section 1983") is the statutory vehicle for discussing the federal constitutional claims.[4] The state vehicle is Mass.Gen.L. ch. 12, § 11I ("section 11I"), which is part of the Massachusetts Civil Rights Act ("MCRA"), the state "counterpart" to 42 U.S.C. § 1983.[5] The MCRA is basically "coextensive with" the federal statute, except that the MCRA does not require state action. *Chilson v. Polo Ralph Lauren Retail Corp.*, 11 F.Supp.2d 153, 158 (D.Mass.1998); *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 473 N.E.2d 1128, 1130–31 (1985). However, under the MCRA, unlike section 1983, a plaintiff must show that the derogation of rights occurred "by threats, intimidation or coercion." Mass.Gen.L. ch. 12, § 11H; *Bally v. Northeastern Univ.*, 403 Mass. 713, 532 N.E.2d 49, 52 (1989). This aspect of the MCRA is discussed separately below.

### 1. RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHTS (COUNT I)

Count I alleges "unlawful retaliation" under the First Amendment to the United

5. In pertinent part, section 11I states as follows:

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to interfere with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.

Mass.Gen.L. ch. 12, § 11I.

States Constitution and the Massachusetts Declaration of Rights. Because the protection of free speech in the Massachusetts Declaration of Rights mirrors the First Amendment, *see Opinions of the Justices,* 387 Mass. 1201, 440 N.E.2d 1159, 1160 (1982), the court will discuss the state-law component of Count I under the First Amendment's umbrella.

In essence, both parties address Count I pursuant to the standards set forth in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy,* the Supreme Court stated that an individual who claims to be the victim of retaliation for the assertion of a constitutional right must demonstrate, first, that the conduct in question was constitutionally protected and, second, that the conduct was a substantially motivating factor for the action taken by the defendant. *See id.* at 287, 97 S.Ct. 568. Defendants assert that Plaintiff can prove neither factor.

a. *Is the Conduct Constitutionally Protected?*

The First Amendment states in relevant part that "Congress shall make no law ... abridging the freedom of speech, or of the press, or of the right of the people to peaceably to assemble, and to petition the Government for a redress of grievances." United States Constitution, Amend. 1. Plaintiff alleges that two First Amendment clauses are at play here: the free speech clause and the petition clause. While Defendants focus mainly on the free speech clause, they make general arguments which the court finds applicable to the petition clause as well.

i. The free speech clause

The essence of Defendants' assertion is that the "speech" in question, Plaintiff's personal grievance and the 1990 lawsuit, is not constitutionally protected because it was not a matter of "public concern" to the community, a prerequisite to most First Amendment claims. *See Tang v. Rhode Island Dep't of Elderly Affairs,* 163 F.3d 7, 12 (1st Cir.1998); *Boyle v. Burke,* 925 F.2d 497, 505 (1st Cir.1991) (citing *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).[6] As this court recognized in its report and recommendation regarding Defendants' earlier motion to dismiss, " '[c]ourts have limited public concern to information needed to enable citizens to make informed decisions about the operation of government, needed to disclose misconduct or needed to generate public debate on some issues of significant public interest.' " (Docket No. 21: report and recommendation dated June 19, 1998, at 6, adopted July 29, 1998) (quoting *Brayton v. Monson Pub. Sch.,* 950 F.Supp. 33, 37 (D.Mass.1997) (Ponsor, J.)) (further internal quotation marks omitted).

Defendants' argument with respect to the "public concern" aspect of Count I relies primarily on the First Circuit's opinion in *Tang. Tang* held that an employee's "individual personal complaints about working conditions" did not constitute matters of public concern sufficient to allow a free speech-based retaliation claim to sur-

---

**6.** Defendants do not argue with much force a second prerequisite, namely, that "the government's interests in the efficient performance of the workplace" outweighs "the strength of [Plaintiff]'s and the public's First Amendment interests." *Tang,* 163 F.3d at 12. (See Defendants' Brief at 7 (stating merely the following: "As [Plaintiff] has not identified

any constitutionally protected activity, [he] has also failed the second test under *Tang,* as he has not shown that his and the public's First Amendment interests outweigh the Town's interest in the efficient performance of the workplace."). The court, therefore, does not rest its recommendation on this issue.

vive. *Id.*, 163 F.3d at 12.[7] As the First Circuit explained, the First Amendment's free speech clause " 'does not require a public office to be run as a roundtable for employee complaints over internal office affairs.' " *Id.* at 12 (quoting *Connick*, 461 U.S. at 149, 103 S.Ct. 1684). Here too, Defendants assert, the "speech" at issue in Plaintiff's 1990 complaint was "entirely personal." (Docket No. 68: Defendants' Memorandum of Reasons in Support of Defendants' Motion for Summary Judgment ("Defendant's Brief") at 6–7.) The court agrees.

Four of the six counts in Plaintiff's 1990 complaint—invasion of privacy, defamation, breach of contract and liability under the Massachusetts Tort Claims Act ("MTCA"), Mass.Gen.L. ch. 258—were undoubtedly personal and, therefore, undeserving of the constitutional protection which Plaintiff now invokes. Similarly, the allegations underlying the remaining two counts, although ostensibly civil rights claims, were, like *Tang*, peculiar to a disciplinary action taken against Plaintiff for violating police department policy. Plaintiff never claimed that he brought the action to inspire public debate or change. Indeed, the only relief that Plaintiff sought was money for himself.

The Supreme Court's decision in *Connick* is instructive in this regard. There, an assistant district attorney brought a civil rights action contending that her employment was terminated because she exercised her right to free speech. *Id.*, 461 U.S. at 141, 103 S.Ct. 1684. The speech at issue involved a questionnaire she had distributed to co-workers the day after she

had been notified that she would be transferred. *Id.* The questionnaire sought the views of her fellow staff members concerning a variety of issues. *Id.* According to the Supreme Court, only one question—inquiring if assistant district attorneys "ever feel pressured to work in political campaigns on behalf of office supported candidates"—arguably touched on a matter of public concern. *Id.* at 149, 103 S.Ct. 1684. The remaining questions—pertaining to the confidence and trust that the plaintiff's coworkers possessed in various supervisors, the level of office morale, and the need for a grievance committee—were deemed "mere extensions of [the plaintiff's] dispute over her transfer" and, as such, were unworthy of First Amendment protection. *Id.* at 148, 103 S.Ct. 1684. Thus, the bulk of "speech" at issue in *Connick*, even though phrased in terms broader than the employee herself, was nonetheless unprotected.

Here, as described, the "speech" at issue in Plaintiff's 1990 lawsuit sought *solely* to resolve Plaintiff's personal concerns with his superiors. There was not even a hint of resolving institutional, let alone public, issues. Thus, there is even more reason here than in *Connick* for finding no First Amendment protection. *See also Flynn v. City of Boston*, 140 F.3d 42, 47 (1st Cir. 1998) (since "speech" of terminated city employees pertained to their jobs and affected their working relationship with their supervisor, employees could not maintain First Amendment retaliatory discharge claim); *Alinovi v. Worcester Sch. Comm.*, 777 F.2d 776, 787 (1st Cir.1985) (holding that letters of reprimand issued to teacher

---

7. The plaintiff's "complaints" in *Tang* were that she was erroneously placed on administrative leave with pay for a few days; that her work-space was twice relocated; that a filing cabinet was moved to a different floor from her work space and placed alongside other filing cabinets; that she was instructed to take phone calls at her own desk and not elsewhere in the department; that she was harassed and retaliated against when her coworker repeatedly asked her when she would no longer need a computer they shared; and that a photocopier was placed near the shared computer. *Id.*

did not implicate issue of "public concern" under *Connick* despite tangential connection to incident implicating teacher's Fourth Amendment rights; "when [the teacher] posted the letters ... she was not concerned with any possible violation of her Fourth Amendment rights, but rather, with [a] purely personal issue concerning the lack of action on the part of the administration regarding her disciplinary problem"); *Brayton*, 950 F.Supp. at 37 (holding that public comment by high school coach which "might, in a general sense, be considered a matter of concern, or at least interest, to some members of the ... community" does not satisfy the "public concern" requirement and, therefore dismissing the plaintiff's First Amendment claim for failing to state a claim upon which relief may be granted). *Compare Rankin v. McPherson*, 483 U.S. 378, 386–87, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (holding that plaintiff's comment to coworker concerning the attempted assassination of President Reagan dealt with a matter of public concern where comment "was made in the course of a conversation addressing the policies of the President's administration" and "came on the heels of a news bulletin regarding what [was] certainly a matter of heightened public attention"); *Meaney v. Dever*, 170 F.Supp.2d 46, 51 (D.Mass. 2001) (Gertner, J.) ("Blasting a horn outside of City Hall in connection with an informational union picket, is plainly a protected activity.").

In its report and recommendation of June 19, 1998, this court did opine that "[t]he official misconduct by public officials alleged in Plaintiff's 1990 lawsuit" appears to "constitute[ ] a matter of public concern sufficient to withstand a motion to dismiss." (*Id.* at 7, adopted July 29, 1998.) Now that discovery has been completed, however, Defendants' "public concern" argument has taken on greater significance. First, in addressing the motion to dismiss,

the court was simply concerned with the liberal pleading requirements of *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and Fed.R.Civ.P. 8(1)(2), not the summary judgment standards presently in play. Second, only now does the court have before it a copy of Plaintiff's 1990 complaint. When addressing Defendants' motion to dismiss, in contrast, the court considered only the description of the 1990 lawsuit as set forth in Plaintiff's original complaint in this action—a description which highlighted the alleged constitutional aspects of the 1990 lawsuit over its more personal components. (See, e.g., Docket No. 1: Complaint ¶ 8.) In short, it is now clear beyond peradventure of doubt that Plaintiff's 1990 lawsuit, i.e., his "speech," dealt with only private issues and did not touch upon matters of public concern. Accordingly, the court believes that Defendants are entitled to summary judgment on the free speech components of Count I.

### ii. The petition clause

Although Defendants have not expressly addressed the petition clause of the First Amendment, the court believes, for many of the reasons just stated, that Plaintiff's petition clause claim must fail as well.

In *San Filippo v. Bongiovanni*, 30 F.3d 424 (3rd Cir.1994), upon which Plaintiff relies almost exclusively, the Third Circuit held that "[t]he mere act of filing a non-sham petition is not a constitutionally permissible ground for discharge of a public employee." *Id.* at 443. Thus, according to the Third Circuit, it is unconstitutional to fire a public employee merely because he filed a legitimate ("non-sham") petition for redress in court. In so doing, the court rejected the approach taken by many other circuits that the petition at issue must also raise a matter of public concern.

Defendants do not argue that Plaintiff's 1990 lawsuit was illegitimate or a "sham." Nor could they given that, as Plaintiff points out, the lawsuit resulted in a $22,000 settlement. Thus, were the Third Circuit's test to apply, Plaintiff would appear to have properly shown, at least for summary judgment purposes, that his conduct was constitutionally protected by the petition clause simply because his 1990 lawsuit was legitimate.

Unfortunately for Plaintiff, this court is not bound by the Third Circuit's decision. More problematically for Plaintiff, the Third Circuit acknowledged in *San Filippo* that as of the date of the decision, July 21, 1994, each of the other circuit courts to consider the issue, including the First Circuit, had held "that a public employee who alleges that he or she was disciplined in retaliation for having filed a lawsuit against his or her employer does not state a claim under § 1983 unless the lawsuit addressed a matter of public concern." *San Filippo*, 30 F.3d at 439–40. The First Circuit case cited in this regard was its 1991 opinion in *Boyle*.[8]

As the Third Circuit recognized, the First Circuit in *Boyle* did appear to require a "public concern" component for petition clause retaliation claims:

[A]bsolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content. In *Connick*,

the Supreme Court struck a balance between the speech rights of the employee as a citizen and the interests of the State as employer and provider of essential services, holding that "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."

*Boyle*, 925 F.2d at 505 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684, and citing *Gray v. Lacke*, 885 F.2d 399, 412–13 (7th Cir.1989), and *Belk*, supra). To the extent any doubt remained, the "public concern" requirement was made explicit by the First Circuit in *Tang*, a petition clause case. There, as indicated, the First Circuit explained that a fundamental consideration in any First Amendment retaliation analysis is whether the speech or the petition in question involved "matters of public concern" or merely touched on matters "of personal interest." *Tang*, 163 F.3d at 12.

As described, the petition here, Plaintiff's 1990 lawsuit, involved only matters of personal interest. One need only read petition cases cited by Plaintiff to see how his 1990 lawsuit fell markedly short of raising matters of public concern. *See, e.g., Zorzi v. County of Putnam*, 30 F.3d

**8.** The other circuit cases cited by *San Filippo* are *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2nd Cir.1993); *Day v. South Park Indep. Sch. Dist.*, 768 F.2d 696, 703 (5th Cir.1985); *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir.1989); *Rice v. Ohio Dep't of Transportation*, 887 F.2d 716, 720–21 (6th Cir.1989), *vacated on other grounds*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990); *Altman v. Hurst*, 734 F.2d 1240, 1244 n. 10 (7th Cir.1984); *Belk v. Town of Minocqua*, 858 F.2d 1258, 1261–62 (7th Cir.1988); *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th

Cir.1985); and *Renfroe v. Kirkpatrick*, 722 F.2d 714, 715 (11th Cir.1984). The court also notes that, in recent years, *San Filippo* has been roundly criticized. *See, e.g., Rendish v. City of Tacoma*, 123 F.3d 1216, 1222–23 (9th Cir.1997); *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997); *Smith v. Bates Tech. College*, 139 Wash.2d 793, 991 P.2d 1135, 1146–47 (2000); *Sussman v. N.Y. City Health & Hospitals Corp.*, 1997 WL 334964, at *8–9 (S.D.N.Y. June 16, 1997).

885 (7th Cir.1994) (petition involved political issues and malfeasance); *Powell v. Basham*, 921 F.2d 165 (8th Cir.1990) (similar); *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989) (petition sought investigation of alleged governmental misconduct by attorney general's office). Plaintiff's conduct, therefore, cannot be said to have been constitutionally protected under either the free speech clause or the petition clause. Thus, in the court's view, summary judgment should enter in Defendants' favor with respect to Count I in its entirety. Still, if for no other reason than to provide a complete report and recommendation, the court will address the second factor set forth in *Mt. Healthy.*

b. *Was the Protected Conduct a Substantially Motivating Factor for Defendants' Action?*

 Two types of adverse "actions" were allegedly taken against Plaintiff in retaliation for exercising his purported First Amendment rights via his 1990 lawsuit. First and foremost, Plaintiff asserts that he was not reappointed in June of 1995. Second, Plaintiff contends that he was subjected to ongoing harassment. In response, Defendants assert that neither of these supposedly retaliatory actions can be shown to have been substantially motivated by Plaintiff's 1990 lawsuit, assuming for purposes of argument only that the 1990 lawsuit encompassed constitutionally protected activity. The court tends to agree with Defendants with regard to the first allegedly adverse action, Defendants' decision not to reappoint Plaintiff, but believes that the second series of actions, ongoing harassment, is a closer question.

 "[I]f the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech," the plaintiff must also "show that the protect-ed expression was a substantial or motivating factor in an adverse employment action." *Tang,* 163 F.3d at 12 (citations an internal quotation marks omitted). "The First Circuit Court of Appeals [has] described the 'substantial' or 'motivating' factor test as a 'but for' causation test." *Storlazzi v. Bakey,* 894 F.Supp. 494, 502 (D.Mass.) (quoting *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993)), *aff'd,* 68 F.3d 455 (1st Cir.1995). Thus, a plaintiff cannot satisfy his burden of causation by "relying solely on the temporal proximity of the [allegedly] protected [speech] to the alleged retaliatory conduct" without identifying "independent facts to support the allegation that his [allegedly] protected speech substantially motivated [the defendants] to punish him." *Id.* at 502–03.

As for the failure to reappoint, the first allegedly adverse action, the fact that four and one-half years passed between the settlement of the 1990 lawsuit and the adverse action (five and one-half years if calculated from the date the lawsuit was filed) severely undercuts, if not eviscerates, any causal connection. *Compare, e.g., Ways v. City of Lincoln,* 909 F.Supp. 1316, 1325 (D.Neb.1995) (five years between prior lawsuit and allegedly retaliatory acts too long to provide causal nexus), *with Parks v. City of Brewer,* 56 F.Supp.2d 89, 96 (D.Me.1999) (inference of causation appropriate where, eight days after plaintiff voiced concerns, he was notified that his performance review would be continued, and, at the continued review a few weeks later, plaintiff was informed that his contract would not be renewed). Indeed, Clark, at least, was unaware that Plaintiff had filed a lawsuit against the town in 1990 when the Board of Selectmen authorized the other officers' reappointments in 1995. Accordingly, the court believes, Hadley and Clark, the ones apparently with the

ultimate power to reappoint, would be entitled to summary judgment on this issue.

Plaintiff's claim with respect to the second adverse action—the "constant, repeated and daily harassment" that purportedly occurred between 1990 and 1995—is directed solely at Hukowicz. Specifically, Plaintiff avers that Hukowicz "referr[ed] to [him] in a derogatory manner and behind his back"; "demean[ed] and yelled at [him] in the presence of others"; "reprimand[ed][him] without just cause"; "den[ied][him] work details and work shifts"; "chang[ed][his] preassigned private (higher paid) details to regular shift (lower paid) details"; "refused to allow [him] to take ... police training courses in updates in the laws and contemporaneous police issues"; "den[ied][him] reimbursement for police training courses in updates in the laws and contemporaneous police issues"; "refus[ed] to reimburse [him] for equipment damaged and/or lost in the line of duty ... (i.e., ... while pursuing a criminal defendant)"; and "encourag[ed] complaints against [him]." (Plaintiff's Exhibits ¶ 5.)

As an initial matter, it is difficult to differentiate between the alleged harassment Hukowicz inflicted on Plaintiff before 1990—the substance of the 1990 complaint—and that which arose afterwards. As Defendants point out, the record shows that Plaintiff and Hukowicz were in conflict from practically the first day of Plaintiff's employment, well before Plaintiff instituted the 1990 action. Nary a dispute has gone unnoticed.[9]

In many ways, this case is not much different than *Rubinovitz v. Rogato*, 60 F.3d 906 (1st Cir.1995), where the First Circuit upheld summary judgment in favor of the defendants, municipal officials, because the plaintiffs did not provide any evidence of a causal link of retaliation. *Id.* at 911. In *Rogato*, the plaintiffs had submitted a letter, similar to the 1990 complaint at issue here, in which they complained of incidents of harassment. When the plaintiffs subsequently alleged that they were further harassed for filing the letter, the court found that they did not offer a "basis upon which to distinguish

9. For example, the parties point out that between 1982 and 1984, Hukowicz recommended Plaintiff for discipline. When he was a sergeant, Hukowicz also issued the plaintiff a traffic citation. Then, in the mid 1980s, Hukowicz repeatedly reprimanded Plaintiff for patrolling the Hampshire Mall, which had its own security force. When Plaintiff came for training as a police officer, Hukowicz stated: "How the hell did you ever get on this department?" (Defendants' Exhibits, Exhibit A at 13.) To Plaintiff, Hukowicz "hated to see anybody new come on the department that was more educated or better trained because it threatened his position." (*Id.*, Exhibit D at 27.) According to Plaintiff, Hukowicz was "old school" and "nobody ever got training from [him]." (*Id.* at 39.)

Things came to head in March of 1987 when Plaintiff filed a letter of complaint with the police chief alleging that Hukowicz's previous year's performance evaluation was full of "unprofessional and biased opinions," (*Id.*,

Exhibit F (emphasis omitted)), and requesting that it be removed from his file.

In July of 1987, after Hukowicz was promoted to lieutenant, Plaintiff again complained to the police chief, this time asserting that he and another officer were improperly ordered by Hukowicz to conduct their patrols separately. The chief advised Plaintiff that the patrol order had been issued to all officers by him, through Hukowicz, advised Plaintiff to follow Hukowicz's orders and directed him, in the future, to follow the grievance procedure set forth in the collective bargaining agreement.

To be sure, the chief also allowed Plaintiff to follow-up on an investigation commenced by Hukowicz. This, however, prompted Hukowicz to yell at Plaintiff for investigating one of his cases and to advise the chief that the case had already been investigated. As a result, the chief advised Plaintiff to leave the matter alone.

pre- and post-[letter] harassment." *Id.* The court upheld summary judgment, in part, because the inference upon which the plaintiffs relied rested on a "tenuous insinuation." *Id.*

Nonetheless, the post–1990 conduct by Hukowicz, if true, would appear to at least raise the specter of retaliation. Granted, Hukowicz has offered several facially legitimate reasons for his actions, e.g., that the collective bargaining agreement required him to reduce the number of part-time police officers, that Plaintiff expressed a gradual disinterest in the position and that, since at least 1991, Plaintiff, unlike other part-time officers, had a history of disciplinary actions. Still, the court believes that a reasonable jury could consider these justifications pretextual. Thus, if the causation issue was to be reached, a jury could well determine whether or not Plaintiff has demonstrated that Huckowicz' post–1990 harassment was substantially motivated by Plaintiff's 1990 complaint. *See Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982) (finding it to be "a question of fact" whether a "campaign of harassment" reached threshold of actionability).

The court's conclusion, however, comes with two important caveats. First, in no respect does the court believe that a reasonable jury could conclude that the harassment or the failure to reappoint was by *Clark* or any other *Hadley official* in retaliation for Plaintiff's bringing the 1990 complaint. If the claim survives at all, it would be against Huckowicz only. Second, for all the reasons described, the court does not believe that Plaintiff's conduct in bringing the 1990 lawsuit was constitutionally protected in the first place. That threshold not having been crossed by

Plaintiff, all defendants should be entitled to summary judgment on Count I.

### 2. EQUAL PROTECTION (COUNT II)

Plaintiff's equal protection claim (Count II) alleges a violation of the equal protection clauses of both the United States Constitution and the Massachusetts Declaration of Rights. The court will refer simply to the federal Equal Protection Clause since "equal protection of the law considerations are substantially the same under the State and Federal Constitutions." *Baird v. Attorney General,* 371 Mass. 741, 360 N.E.2d 288, 300 (1977). In order to succeed on such a claim, Plaintiff must show (1) that "compared with others similarly situated," he "was selectively treated" and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen of Randolph,* 932 F.2d 89, 94 (1st Cir.1991).

#### a. Selective Treatment

With regard to the first step, Defendants assert that Plaintiff was not selectively treated in comparison with others similarly situated as he was one of three part-time police officer who were not reappointed. Nonetheless, the court will assume for purposes here that Plaintiff has adequately demonstrated selective treatment. As Plaintiff points out, the two other officers, unlike him, were on inactive status, had not worked for at least three years and had not requested reappointment.[10]

---

**10.** Since the court assumes for purposes here that Plaintiff may proceed to the second step of the analysis, it is not necessary to address Plaintiff's alternative argument that he qualifies as an equal protection "class of one" under *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

### b. Based on Impermissible Considerations

 Here, the fundamental equal protection question concerns the second step of the analysis, whether Plaintiff's alleged selective treatment was based on impermissible considerations. In this regard, Plaintiff argues only that his selective treatment "was based on ... [an] intent to ... *punish the exercise of [his First Amendment] constitutional rights*" and that "Hukowicz's stated reasons for his decision to terminate him were pretextual." (Docket No. 70: Plaintiff's Motion and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Brief") at 19, 20 (emphasis in original).) He does not allege any racial or religious discrimination on Defendants' part or that Defendants acted with malicious bad faith.

As previously explained, the court believes that Plaintiff's conduct in bringing the 1990 lawsuit was not protected by the First Amendment. Neither the lawsuit itself nor the speech contained therein touched upon a matter of public concern. Accordingly, the failure to reappoint could not have been motivated by a desire to punish Plaintiff for exercising his constitutional rights. Ergo, Plaintiff is unable to prove an equal protection violation under either state or federal law and the court, therefore, will recommend that summary judgment be granted Defendants on Count II.

### 3. Qualified Immunity

 Finally, Defendants argue that qualified immunity protects Hukowicz from individual liability with respect to Counts I and II. "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate clearly established statuto-

ry or constitutional rights of which a reasonable person would have known." *Roldan–Plumey v. Cerezo–Suarez,* 115 F.3d 58, 65 (1st Cir.1997) (citation and internal quotation marks omitted). In response, Plaintiff asserts that "it is ludicrous to suggest that, by the mid 1990's, a reasonable Police Chief would not have known that he could not retaliate against an employee because he had exercised his First Amendment rights." (Plaintiff's Brief at 21.)

In the court's opinion, Plaintiff's argument misses the mark. First, as described, it is difficult to differentiate between the harassment Hukowicz allegedly inflicted before 1990 and that which he inflicted after. Second, assuming that a reasonable police chief should have been aware that retaliation for exercising First Amendment rights was prohibited, Plaintiff's conduct, as detailed above, was not constitutionally protected in the first place. Accordingly, the court again suggests that Hukowicz is entitled to summary judgment on both Counts I and II.

### B. Count III

Count III, which is directed solely at the municipality, Hadley, makes two claims: first, that Hadley, through Hukowicz and Clark, retaliated against Plaintiff pursuant to an unconstitutional policy or custom; and second, that the municipality, pursuant to an unconstitutional policy or custom, failed to supervise, train and discipline Hukowicz. Like Counts I and II, Count III is brought pursuant to section 1983. Also like Counts I and II, the court believes that Count III fails at the threshold.

### 1. The Law

 For a plaintiff to maintain a section 1983 action against a municipality, he must allege that his civil rights were violated as the result of an official "policy

or custom." *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This showing is two-fold. First, the plaintiff "must identify a municipal 'policy' or a 'custom' that caused [his] injury." *Silva v. Worden,* 130 F.3d 26, 30–31 (1st Cir.1997) (citing *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Pembaur v. Cincinnati,* 475 U.S. 469, 479–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Second, the disputed "policy" or "custom" must "be the cause and moving force behind the deprivation of constitutional rights." *Silva,* 130 F.3d at 31 (citing *Bryan County Comm'rs,* 520 U.S. at 404, 117 S.Ct. 1382).

### 2. MUNICIPAL RETALIATION

 Defendants argue that no municipal "policy or custom" is at play since the non-reappointment was ordered by the Board of Selectmen "as a whole" and Plaintiff "merely accuses Selectman Clark of nefarious conduct." (Defendant's Brief at 13.) Plaintiff, on the other hand, asserts that his evidence, in fact, targets Hadley via the Board.[11]

Even were the court to assume that Plaintiff's non-reappointment was an official "policy" or "custom," Plaintiff's claim fails at the causation prong, an issue Plaintiff mostly ignores, for many of the reasons already explicated. At best, Plaintiff appears to argue that Hadley caused the "constitutional injury" which stemmed from Hukowicz's retaliation. (Plaintiff's Brief at 24.) As indicated, however, the court does not believe that there was a constitutional violation in the first place. Accordingly, to the extent that Count III alleges that Hadley, whether through Hukowicz, Clark or someone else, retaliated against Plaintiff pursuant to an unconstitutional policy or custom, summary judgment should enter in its favor.

### 3. MUNICIPAL FAILURE TO TRAIN OR SUPERVISE

 That part of Count III which alleges a municipal failure to train or supervise Hukowicz must fail for similar reasons. The "applicable legal test" for such a claim requires Plaintiff to demonstrate three things:

(1) that the governmental entity's employees engaged in a continuing, widespread, persistent pattern of conduct in violation of the constitutional standard, (2) that the governmental entity's policymaking officials, after having notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of that misconduct, and (3) that the plaintiff was injured by continued misconduct within the persistent pattern, thus showing that the custom was a moving force behind the violation of the constitutional standard.

*Armstrong v. Lamy,* 938 F.Supp. 1018, 1035–36 (D.Mass.1996) (citations omitted).

---

**11.** There are at least two methods by which a municipality may be held liable for acts taken pursuant to a policy: "when the deprivation resulted (1) 'from the decisions of its duly constituted legislative body', or (2) from the decisions 'of those officials whose acts may fairly be said to be those of the municipality.'" *Silva,* 130 F.3d at 31 (quoting *Bryan County Comm'rs,* 520 U.S. at 403–04, 117 S.Ct. 1382) (footnote omitted). In such "policy" cases, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur,* 475 U.S. at 481, 106 S.Ct. 1292. Alternatively, a municipality may be liable to a plaintiff who is injured by "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker [when] the relevant practice is so widespread as to have the force of law." *Bryan County Comm'rs,* 520 U.S. at 404, 117 S.Ct. 1382.

Again, as indicated, none of Hukowicz's conduct was "in violation of [a] constitutional standard."

To be sure, Hadley also argues that Plaintiff never officially complained about Hukowicz's allegedly retaliatory response to the 1990 complaint and, thus, it cannot be considered "deliberately indifferent." However, as pointed out at oral argument, a July 26, 1993 handwritten note to the "Selectmen" from Hadley's administrative assistant, dated July 26, 1993, states that Plaintiff told his attorney "that because of an earlier lawsuit, he was being discriminated against regarding shifts." (Plaintiff's Exhibits, Exhibit M.) Still, even assuming Hadley had notice of Hukowicz's alleged abuse, it is Plaintiff's burden to show that the town "remained deliberately indifferent to or tacitly authorized continuation of that misconduct" and that it was "the moving force behind the violation." *Armstrong*, 938 F.Supp. at 1036. Plaintiff fails in this regard as well. At bottom, therefore, the court suggests summary judgment enter in Hadley's favor with respect to both portions of Count III.

## C. POSTSCRIPT: MCRA

█ Insofar as Counts I, II and III allege violations of the MCRA, Defendants assert, as an alternative argument, that Plaintiff cannot prove that his civil rights were violated as a result of "threats, intimidation or coercion." Mass.Gen.L. ch. 12, § 11H. Plaintiff responds by stating that Hukowicz's campaign of harassment meets that very standard.

In the court's view, even assuming that Hukowicz's conduct constituted "threats, intimidation, or coercion" as those terms are defined under Massachusetts law, Plaintiff's MCRA claims cannot survive. As Plaintiff acknowledges, in order to establish a prima facie case under the MCRA he must establish, inter alia, that Defendants have interfered with his rights under the federal or state constitution or laws. For all the reasons stated, Plaintiff has made no such showing.

## V. CONCLUSION

For the reasons described, the court recommends that Defendants' motion for summary judgment be ALLOWED in its entirety.[12]

---

12. The parties are advised that under the provisions of Rule 3(b) of the Rules for .United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.