*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL GORBE, EDWARD SHARGABIAN, and TYRON RUCKER,

UNPUBLISHED
January 19, 2023

Plaintiffs-Appellants,

v

No. 356801
Oakland Circuit Court
LC No. 2019-178213-CD

CITY OF LATHRUP VILLAGE, WILLIAM ARMSTRONG, and SCOTT MCKEE,

Defendants-Appellees.

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

Plaintiffs formerly worked as police officers for defendant city of Lathrup Village (the "City"). They brought this employment discrimination action against the City and individual defendants William Armstrong and Scott McKee, each of whom served as Chief of Police during plaintiffs' employment. Plaintiffs alleged claims for age and race discrimination under the Elliott Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, unlawful retaliation under the ELCRA, and violation of the Whistleblowers Protection Act (WPA), MCL 15.361 *et seq*. The trial court granted defendants' motions for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and dismissed all of plaintiffs' claims. Plaintiffs appeal as of right.[1] We affirm.

## I. BACKGROUND FACTS

All three plaintiffs were officers on the City's police force while defendant Armstrong ("Armstrong") was the chief of police. Although Armstrong remained chief of police until December 2016, plaintiffs contended that he essentially allowed McKee to run the police department and that it was McKee's plan to eliminate older officers in the department and replace

---

[1] We note that plaintiff Rucker, a licensed attorney in Michigan, is representing himself and his coplaintiffs on appeal.

-1-

them with younger, new officers fresh from the police academy. After Armstrong retired as chief of police in December 2016, he was replaced by McKee.

Plaintiff Tyron Rucker is African-American. Plaintiffs Michael Gorbe and Edward Shargabian are both Caucasian. Defendant Armstrong is also African-American, whereas defendant McKee is Caucasian. All three plaintiffs were over the age of 40 years when their employment with the City ended in 2016 and 2017.

Rucker originally became a part-time officer in 2006, and was promoted to a full-time position in 2009. According to Rucker, Armstrong told him at that time that McKee did not want to promote him, and instead favored promoting another officer, Michael Zang, who was young and Caucasian. In 2015, Zang and Rucker applied for two open sergeant positions. Zang was offered one of the positions after taking written and oral examinations. Although Rucker also took the written examination for the sergeant's position, he was not able to complete the oral examination in 2015 because his employment was terminated in July 2015. It was alleged that Rucker failed to follow departmental policy when investigating a reported breaking and entering at a business and then lied to his superiors about whether he fully searched the premises. Rucker challenged the decision and in March 2016, an arbitrator ordered Rucker's reinstatement. Although the arbitrator found that Rucker violated departmental policy and neglected his duties, he concluded that the facts did not support termination of Rucker's employment under the City's policy of progressive discipline. The arbitrator also found that Rucker did not lie to his superiors because he corrected his initial responses about whether he conducted a full search of the premises. Before then, Rucker's last discipline was a one-day suspension for driving a department vehicle into a flooded area in August 2014.

When Rucker returned to work in 2016, he was permitted to take the oral examination for the sergeant's position, but he was informed that the City would not be filling that second position due to budget constraints. Rucker filed a complaint with the Equal Employment Opportunity Commission (EEOC) over the refusal to promote him to the sergeant position.

Armstrong retired and McKee took over as chief of police. McKee suspended Rucker in January 2017 for not properly seeking a leave of absence for three consecutive days of missed work. In August 2017, McKee conducted a competency hearing on Rucker's unsatisfactory job performance involving a number of matters. As a result of that hearing, the union representative agreed that Rucker should undergo some remedial training because of an incident in which he failed to discover a knife on a suspect when conducting a pat-down search. Shortly thereafter, Rucker filed another complaint with the EEOC for discrimination and retaliation.

In September 2017, Rucker wrote letters to the Oakland County Prosecutor's Office and the Michigan Attorney General. He reported that a fellow officer failed to read a suspect his *Miranda*[2] rights before taking a statement from the suspect. In October 2017, Rucker was disciplined for not properly handling an investigation of a breaking and entering at a residence in September 2017, when he did not initially search the entire residence. He was suspended for 15

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

days in October and November 2017. On November 13, 2017, Rucker submitted his letter of resignation, stating that he felt constructively discharged because of the way he had been treated because of continuing discrimination in the department. Rucker brought claims for age and race discrimination, retaliation in violation of the ELCRA, and violation of the WPA.

Plaintiff Michael Gorbe was hired as a full-time officer in 2005. Gorbe described a history of problems working within the police department, including McKee's conduct and plan to rid the department of older employees to replace them with younger hires. On March 23, 2016, Gorbe responded to a call involving a Southfield police officer. McKee informed Gorbe that he was going to be suspended for three days for going outside the City's limits to respond to that call. However, Gorbe's physician placed him on a medical leave of absence, which Armstrong approved. While Gorbe was on his leave of absence, he made complaints to the City about the police department, including attempts to get rid of older officers in favor of younger hires. Gorbe also filed a complaint with the EEOC for age discrimination. The City hired outside counsel to investigate Gorbe's claims of discrimination and unfair treatment. A report issued in July 2016 found no evidence that Gorbe's treatment was due to his age.

In September 2016, Gorbe was notified that he had no more available leave time. Andrew Potter became the new city administrator in November 2016. Pursuant to a collective-bargaining agreement (CBA), Gorbe was sent for a psychological evaluation by Linda K. Forsberg, Ph.D., who found that he was fit and able to return to work. On November 17, 2016, Armstrong notified Gorbe by letter that he was to return to work on November 21, 2016, or he would be deemed to have resigned his position. Gorbe did not return to work as directed and Armstrong turned the matter over to Potter to handle. A hearing was scheduled for November 29, 2016, on Gorbe's failure to return to work. On that date, Gorbe produced a letter from his physician, stating that he was unable to work until further notice due to post-traumatic stress disorder, psychophysiological insomnia, and elevated blood pressure. On December 5, 2016, the City notified Gorbe that his employment was terminated because he failed to return to work as scheduled and his doctor's note provided no reasonable likelihood that he would return to work on a timely basis. Gorbe thereafter filed a second complaint with the EEOC, alleging that he was terminated in retaliation for filing the earlier EEOC complaint.

Plaintiff Edward Shargabian worked as a reserve officer in 2007 and was hired as a part-time police clerk in May 2015. His employment was terminated on February 10, 2017, for failure to complete a new background packet after having been granted several extensions. Shargabian brought claims for age discrimination and intentional infliction of emotional distress.[3]

Plaintiffs originally filed their claims in federal court, but all state claims were dismissed without prejudice, which led to this action. Plaintiffs failed to prevail on their claims in federal court. The federal district court granted defendants' motion for summary judgment and dismissed all claims, and that decision was affirmed by Sixth Circuit Court of Appeals. See *Gorbe v City of Lathrup Village*, unpublished opinion of the United States District Court for the Eastern District

---

[3] It is undisputed that Shargabian was replaced by a female officer who was seven years older than Shargabian.

of Michigan, issued March 31, 2021 (Docket No. 17-11782); *Gorbe v City of Lathrup Village*, unpublished order of the United States District Court for the Eastern District of Michigan, entered April 21, 2021 (Docket No. 17-11782); *Gorbe v City of Lathrup Village*, unpublished order of the United States Court of Appeals for the Sixth Circuit, entered April 28, 2022 (Docket No. 21-1532).

In the instant state action, defendants filed separate motions for summary disposition against each plaintiff. Follow a hearing, the trial court took the matter under advisement. The court later issued an opinion and order granting defendants' motions under MCR 2.116(C)(10) (no genuine issue of material fact) and dismissed all claims. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665. A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Summary disposition is appropriate when there is no genuine issue of a material fact and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999).

## III. RUCKER'S CLAIMS

Rucker, who is African-American and was 49 years old when he left his employment with the City in 2017, brought claims for race and age discrimination, retaliation in violation of the ELCRA, and violation of the WPA.

The ELCRA bars discrimination on the basis of race or age. MCL 37.2202(1)(a). In *Major v Village of Newberry*, 316 Mich App 527, 540-541; 892 NW2d 402 (2016), this Court explained:

> Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence. In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case. "Direct evidence," in the context of a CRA claim, is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.
>
> In a case where direct evidence is lacking, a plaintiff must establish a prima facie case of age discrimination by proving that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a younger person.

\* \* \*

If a plaintiff establishes a prima facie case of discrimination based on . . . age . . . , the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken. There is no exhaustive list of what constitutes adverse employment actions. And what might constitute an adverse employment action in one employment context might not be actionable in another employment context. Termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation have all been recognized as adverse employment actions. [Cleaned up.]

In order for a plaintiff to prevail on the claim, he or she "must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination." *Id*. at 542.

A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

In cases of both direct and indirect evidence, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision. [*Id*. (quotation marks and citations omitted).]

In this case, Rucker relies in part on evidence of various remarks made by McKee to support his claim that he was discriminated against on the basis of his age. In *Krohn v Sedgwick James of Mich, Inc*, 244 Mich App 289, 299-300; 624 NW2d 212 (2001), this Court noted that some biased remarks made by an employee may be too abstract or ambiguous to support a finding of age discrimination. In *Major*, 316 Mich App at 543-544, this Court explained the factors that a court should consider in determining whether stray remarks are relevant and probative of age discrimination:

(1) whether the alleged discriminatory remarks were made by the person who made the adverse employment decision or by an agent of the employer that was uninvolved in the challenged decision, (2) whether the alleged discriminatory remarks were isolated or part of a pattern of biased comments, (3) whether the alleged discriminatory remarks were made in close temporal proximity to the challenged employment decision, and (4) whether the alleged discriminatory remarks were ambiguous or clearly reflective of discriminatory bias. [Quotation marks and citation omitted.]

Rucker presented evidence to support his claim that defendants, specifically McKee, favored hiring younger men to replace older officers because of a belief that the older officers were "lazy" and more set in their ways. McKee stated that he wanted to replace older officers with young new hires whom he could mold. This statement was attributed to McKee before he actually became chief of police in December 2016. The City also addressed the problem of attracting

younger officers because of its reputation as a quiet residential community in its budget report for 2017-2018, explaining that it could not offer significant opportunities for younger officers to advance. However, none of these remarks were made in relation to the decision to terminate Rucker's employment. Nor were the comments associated with any of the disciplinary actions taken against Rucker over the years. Rucker relies on statements made over a period of many years, and not in relation to any action taken against him directly. Therefore, Rucker failed to produce direct evidence to support his claim of age discrimination.

We agree, however, that the cited statements, together with other evidence, may support an inference of discriminatory animus. The statements were made by McKee, who was the police chief when Rucker was terminated and who had input into the prior disciplinary decisions involving Rucker. Further, although the statements were not directly made in relation to any adverse action against Rucker, they involved a pattern of similar statements that were repeated over time and some of the statements were made in reference to Rucker specifically, in the context of McKee commenting on Rucker's competence. It is possible that the statements were not so much a comment about the ages of Rucker and other officers and instead were intended as an expression of McKee's preference for newer workers who were not set in their ways and could be more easily molded to McKee's liking, but the statements were not so ambiguous to preclude an inference of discriminatory intent. Nonetheless, even if Rucker can show a prima facie claim of age discrimination on the basis of circumstantial evidence, *Major*, 316 Mich App at 540-541, we agree with the trial court that defendants offered legitimate, nondiscriminatory reasons for the adverse employment actions and that Rucker failed to show that the reasons were a pretext for discrimination. *Id*. at 541-542.

Matthew Baumgarten, the city manager from October 2013 to May 2016, developed the budget for the City and it was approved by the city council. Baumgarten explained that Rucker was not promoted to the second sergeant position in 2016 because the position was no longer available at that time because of budgetary constraints. He explained that Rucker was still permitted to take the oral examination for the position because a CBA required the City to keep a list of eligible persons for that position in the event it became available.

The two sergeant positions originally became available in 2015. One of those positions was offered that year to Zang. The second position was not offered to Rucker that year because his employment was terminated and the position remained open. Baumgarten explained that after the City began budgeting for the next fiscal year, there was not enough money to fund both sergeant positions. The City's revenues were less than anticipated and its expenditures were higher than expected that year, so the City was running a deficit and it would have to use its fund balance to make ends meet over the next several years if changes were not made. Baumgarten also explained that the cost to the City for a new sergeant position was not just the difference in pay, but also the cost of long-term benefits, such as retirement. After Rucker was reinstated to his officer position in 2017, he was advised that he was not offered the promotion because the position was no longer being funded under the new budget. Baumgarten stated that he worked on the budget from January to March of 2016, the budget was provided to the city council in April, and it was approved in May. According to Baumgarten, however, the decision not to fill the second sergeant position was made before Rucker was reinstated to his position. Baumgarten justified this decision by explaining that there were three supervisory positions already filled in 2016 (chief, lieutenant, and sergeant), which allowed the department to cover all shifts with a supervisor. In addition, the

-6-

department was able to function for years without a second sergeant overseeing the road patrol. Although the City may have had a fund balance of $1 million, it was not a sustainable practice to dip into that fund for annual expenses. Using the fund balance for annual, recurring expenses would have eventually eliminated the fund balance and a city is required to keep a specific percentage of money on hand at all times.

According to Armstrong, after Rucker's employment was initially terminated in 2015, the police department did not have funds in its budget for a second sergeant position because it had to pay Rucker backpay after the arbitrator's ruling and it had also paid overtime to other officers to cover Rucker's shifts. The city manager told Armstrong that the money for a second sergeant's position was no longer in the budget. However, Rucker was still permitted to complete the testing for the sergeant's position after his reinstatement because, in the event money became available, he would be the next person in line for the position.

Rucker primarily argues that he was wrongly denied the promotion to the second open sergeant's position because of his age or race. However, defendants presented evidence that the second sergeant's position was not filled because of budget constraints. Defendants supported their position with testimony from the city manager, who explained how the 2016 budget led to the decision to eliminate that position for nondiscriminatory reasons. This was a legitimate, nondiscriminatory reason for failing to promote Rucker to the sergeant's position.

Rucker has not shown that this reason was a mere pretext for discrimination. Although Rucker attempted to argue that the budgetary excuse was not legitimate because the difference in pay between his current position and the sergeant's position would not impact the City's budget, he failed to offer proof that the pay difference between the two positions was the only financial impact on the City's budget. Conversely, defendants presented testimony that there were other costs involved in funding the position. In addition, the evidence showed that the decision not to fund the second sergeant's position was made before Rucker completed the requirements for the sergeant position. Furthermore, it was the City's manager who made the decisions regarding the budget, not Rucker's direct supervisors, McKee and Armstrong. In sum, Rucker failed to show that elimination of the second sergeant position for budgetary reasons did not have a basis in fact or was not the actual reason he was denied the promotion.

Rucker also claims that his suspensions for three days in July 2017 and for 15 days in October 2017 were adverse employment actions that contributed to his constructive discharge. Again, however, defendants offered legitimate, nondiscriminatory reasons for these suspensions and Rucker failed to establish a question of fact whether these actions were a pretext for discrimination. Rucker concedes he might not have properly requested time off on the third consecutive day he was off work in January 2017. Although Rucker claimed that he relied on a practice used in the Detroit Police Department that required that he only request one day off from work for illness and would be allowed three days off, there is no dispute that Rucker did not follow the City's departmental policy when he took all three days off.

With respect to the 15-day suspension, Rucker admitted that he did not follow departmental procedures by not initially searching an entire home when responding to an alarm. To the extent that Rucker claims that this 15-day suspension was unwarranted as progressive discipline, the argument lacks merit because the record shows that Rucker had multiple other disciplinary actions,

many related to his job performance. Indeed, this suspension involved conduct similar to what led to his prior disciplinary proceeding in 2015, when his employment was terminated. Rucker failed to show that the reasons for the suspensions did not have a basis in fact or were not the actual reasons he was suspended given the pattern of other disciplinary actions that were supported by the facts. Thus, Rucker failed to establish a question of fact whether the proffered nondiscriminatory reasons for the suspensions were a pretext for discrimination.

In sum, even if Rucker presented evidence to establish a prima facie case of age discrimination, the trial court did not err by granting defendants' summary disposition on this claim on the basis that defendants offered legitimate, nondiscriminatory reasons for the employment actions and Rucker failed to establish a question of fact whether those reasons were a pretext for discrimination.

Rucker also argues that he was discriminated against on the basis of his race. In support of this claim, Rucker presented evidence that McKee frequently used terms such as "ghetto" and "hood rat," and frequently referred to Armstrong, the chief of police, as "Billy boy." These terms are at best insensitive, and at worst have racially offensive meanings. This Court shudders at their usage. Language like this has no place in the work environment. However, the only term used in reference to Rucker was "ghetto." The evidence further showed that others who worked for the City, not just McKee, also used these terms in office banter. Even if McKee used the term "ghetto" when referring to Rucker, Rucker did not show that this comment was used in temporal proximity to the adverse employment actions he experienced to prove discriminatory bias in those decisions. Rucker did not present direct evidence to support his claim that defendants took adverse action against him because of his race.

In *White v Dep't of Transp*, 334 Mich App 98, 107-109; 964 NW2d 88 (2020), this Court discussed claims of racial discrimination without direct evidence, stating:

> "The courts have recognized two broad categories of claims under this section: 'disparate treatment' and 'disparate impact' claims." *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). This case concerns disparate treatment because plaintiff alleges that defendant intentionally discriminated against her on the basis of race. See *Duranceau v Alpena Power Co*, 250 Mich App 179, 182; 646 NW2d 872 (2002).
>
> Because there is "no direct evidence of impermissible bias," plaintiff's claim of intentional discrimination must proceed under the *McDonnell Douglas*[4] burden-shifting framework. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). First, the plaintiff must set forth a prima facie case. In *Hazle*, the Supreme Court determined that the "plaintiff was required to present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination."

---

[4] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

*Id*. at 463. "[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id*. at 464.

If the defendant gives a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, "and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003). "At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Hazle*, 464 Mich at 465, quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998). [Alteration in original.]

Even assuming that Rucker presented evidence to support a prima facie case of race discrimination, we agree that he failed to rebut the legitimate, nondiscriminatory reasons offered by defendants for the employment actions against Rucker.

Although defendants initially terminated Rucker's employment in July 2015, while Rucker was seeking to be promoted to the sergeant's position, defendants had a legitimate, nondiscriminatory reason for taking disciplinary action against Rucker at that time. Although Rucker challenged his termination in an arbitration proceeding and the arbitrator reinstated his employment, the arbitrator agreed that Rucker had not followed departmental procedures when investigating a breaking and entering. In addition to not properly investigating that matter, he was not truthful when he initially was questioned about that investigation. The arbitrator ordered Rucker's reinstatement only because the discipline imposed—termination of his employment— was not consistent with the City's policy of progressive discipline. Thus, even though Rucker was reinstated, defendants' decision to impose some form of discipline, short of terminating Rucker's employment, was justified and cannot be considered a pretext for discrimination.

Furthermore, as explained earlier, after Rucker was reinstated, he was not promoted to the sergeant's position because the position was eliminated for budgetary reasons. Rucker has failed to establish that this reason for denying the promotion was a pretext for discrimination. Indeed, after Rucker's reinstatement, he was allowed to take the oral examination for the sergeant's position, which put him on a waiting list in the event the position later became available.

After Rucker's reinstatement, he was subject to additional disciplinary action, but again, he failed to show that defendants' legitimate, nondiscriminatory reasons for the imposed discipline was a pretext for racial discrimination. In particular, Rucker agreed that he failed to report that he was going to be absent from work, which led to a three-day suspension. Rucker also did not submit evidence to dispute the charge that he failed to properly search a suspect who was armed with a knife and that he failed to follow departmental procedures when investigation a breaking and entering at a residence, which was a second offense. Although Rucker argues that McKee wanted to remove him as an officer in the department, he failed to rebut the factual bases for the

disciplinary decisions related to his failure to follow departmental policies and job performance, which had nothing to do with racial discrimination.

Rucker asserts that defendants "fixed" Zang's written sergeant's examination so that Zang, a young white male officer, would pass it with the highest test score, assuring him the promotion to the single opening for that position. Defendants presented evidence that Zang received a score of 98 out of 100 on the written examination. While Rucker presented evidence that Zang may have bragged or joked about having the answers to the examination, there was no evidence that any of the defendants were involved in administering the examination or had access to the answers. To the contrary, the testimony showed that the written examination was administered by an outside third party and there was no way that Zang or defendants could have known the answers. Thus, there was no factual support for Rucker's belief that defendants rigged the promotional process to allow Zang to receive the position.

Accordingly, the trial court did not err by granting defendants' motion for summary disposition with respect to Rucker's claim of race discrimination.

Rucker also argues that the trial court erred by dismissing his claim for unlawful retaliation under the ELCRA, which prohibits a person from retaliating or discriminating "against a person because the person has opposed a violation of [the ELCRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the ELCRA]." MCL 37.2701(a). We disagree.

To establish a claim of retaliation, a plaintiff must show: "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005) (quotation marks and citation omitted). Rucker clearly satisfied the first three elements of a claim for unlawful retaliation. It is undisputed that Rucker filed complaints with the EEOC and the Michigan Department of Civil Rights, and made complaints directly to his employer regarding his alleged mistreatment. He also filed a federal lawsuit while still employed. There is also no dispute that defendants were aware of Rucker's protected activity, and that Rucker was subject to adverse employment actions while employed by defendants. The issue in dispute is whether Rucker's protected activity was causally connected to the adverse employment actions.

To demonstrate causation between an adverse employment action and protected activity, the plaintiff must establish that his participation in the protected activity was a "significant factor" in the defendant's adverse employment action. Merely showing a causal link between the two is insufficient. *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001), overruled in part on other grounds by *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Causation may be proven by circumstantial evidence, but the evidence must support a reasonable inference of causation, not mere speculation. *Shaw v City of Ecorse*, 283 Mich App 1, 14-15; 770 NW2d 31 (2009). That is, a jury must be able to "reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Id.* at 15. Temporal proximity between events alone may not be enough. The evidence must show that the defendant "took adverse employment action *because of* plaintiff's protected activity . . . ." *West v Gen*

*Motors Corp*, 469 Mich 177, 185; 665 NW2d 468 (2003). Proving retaliation on the basis of temporal proximity alone requires evidence that the employer retaliated against the employee very close in time upon learning of the employee's protected activity. See *Mickey v Zeidler Tool & Die Co*, 516 F3d 516, 525 (CA 6, 2008). If there is a time lapse between events and the plaintiff continues to rely on temporal proximity, the plaintiff must produce other evidence of retaliatory conduct in order to prevail. *Id*.

In *Aho v Dep't of Corrections*, 263 Mich App 281, 291-292; 688 NW2d 104 (2004), this Court held that a period of five years between the protected activity and the plaintiff's dismissal was too tenuous to support a retaliation claim, explaining:

> Although the timing between the protected activity and the adverse action may in some cases constitute circumstantial evidence pointing to a causal nexus, *Wrenn v Gould*, 808 F2d 493, 501 (CA 6, 1987), in this case, the time between the events was remote—approximately five years—thus seriously undermining any claim by plaintiff of a causal connection. Periods much shorter than five years have been found to be insufficient to demonstrate a causal nexus. See, e.g., *Wixson v Dowagiac Nursing Home*, 866 F Supp 1047, 1057 (WD Mich, 1994) (seven months was too remote to support an inference of retaliation); and *Reeves v Digital Equip Corp*, 710 F Supp 675, 677 (ND Ohio, 1989) (three months was too remote to support an inference of retaliation). Courts have consistently held that a lengthy period between the protected activity and the adverse employment action precludes a nexus between the two events. See *Filipovic v K & R Express Systems, Inc*, 176 F3d 390, 399 (CA 7, 1999), quoting *Johnson v Univ of Wisconsin—Eau Claire*, 70 F3d 469, 480 (CA 7, 1995) ("A substantial lapse of time between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.' "); *Vickowski v Hukowicz*, 201 F Supp 2d 195, 210 (D Mass, 2002) ("[T]he fact that four and one-half years passed between the settlement of the 1990 lawsuit and the adverse action (five and one-half years if calculated from the date the lawsuit was filed) severely undercuts, if not eviscerates, any causal connection."); and *Ways v City of Lincoln*, 909 F Supp 1316, 1325 (D Neb, 1995) (holding that five years between the prior lawsuit and allegedly retaliatory acts was too long to provide a causal nexus).

Rucker relies on the burden-shifting approach to prove retaliation rather than relying on direct evidence of retaliation. See *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-538; 620 NW2d 836 (2001). The plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000). Once a prima facie case is established, "the burden shifts to the defendant to articulate a legitimate business reason" for the adverse employment action. *Id*. at 281. "If the defendant produces evidence establishing the existence of a legitimate reason" for the adverse employment action, the plaintiff has an opportunity to prove that the proffered legitimate reason "was not the true reason, but was only a pretext" for the adverse action. *Id*.

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the

decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

It is undisputed that Rucker filed multiple complaints complaining about discrimination and that defendants were aware of this protected activity. As previously discussed, however, defendants' reasons for denying Rucker a promotion to sergeant and subjecting him to disciplinary action were supported by legitimate business reasons for those actions. Defendants demonstrated that the second sergeant's position was not filled because of budgetary constraints. Rucker admitted the factual bases that were offered for the disciplinary actions against him, which involved poor job performance and failure to follow departmental policies. Even if the evidence established a question of fact regarding causation, Rucker failed to show that the legitimate business reasons offered for the adverse employment actions were a mere pretext for retaliating against him for asserting claims of discrimination.

Finally, Rucker alleged that defendants violated the WPA by retaliating against him after he reported a violation of the law by a fellow officer. Rucker wrote letters to the Oakland County Prosecutor's Office and the Michigan Attorney General's Office to report that another officer violated a suspect's constitutional rights by not advising the person of her *Miranda* rights before procuring a written statement from her.

MCL 15.362 prohibits an employer from discriminating or retaliating against an employee for reporting a suspected violation of the law. In *Debano-Griffin v Lake Co,* 493 Mich 167, 171, 175-176; 828 NW2d 634 (2013), the Court applied the burden-shifting framework from *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to claims under the WPA, explaining:

Because whistleblower claims are analogous to other antiretaliation employment claims brought under employment discrimination statutes prohibiting various discriminatory animuses, they should receive treatment under the standards of proof of those analogous claims. Specifically, this case requires application of the burden-shifting framework set forth in *McDonnell Douglas.*

Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action. A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful retaliation. Once a plaintiff establishes a prima facie case, a presumption of retaliation arises because an employer's adverse action is more likely than not based on the consideration of impermissible factors—for example, here, plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action.

The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a

"motivating factor" for the employer's adverse action. A plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for unlawful retaliation. [Cleaned up.]

Where direct evidence of retaliation is offered, the plaintiff need not establish a prima facie case within the *McDonnell Douglas* framework, but may proceed in the same manner as in any other civil case. *Hazle*, 464 Mich at 462-463. Direct evidence is that which, if believed, requires the conclusion that unlawful retaliation was at least a motivating factor in the employer's actions. *Id.* at 462; *Shaw,* 283 Mich App at 14.

In *Whitman v City of Burton,* 493 Mich 303, 313; 831 NW2d 223 (2013), the Court explained what constitutes a prima facie case under the WPA:

> To establish a prima facie case under the WPA, a plaintiff need only show that (1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. Additionally, MCL 15.362 makes plain that protected conduct does not include reports made by an employee that the employee knows are false, or reports given because the employee is requested to participate in an investigation by a public body. [Citations omitted.]

In *Wurtz v Beecher Metro Dist,* 495 Mich 242, 251-252; 848 NW2d 121 (2014), the Court clarified that a prima facie claim under the WPA requires proof of the following elements:

> (1) The employee was engaged in one of the protected activities listed in the provision.
>
> (2) [T]he employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.
>
> (3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. [Citations omitted.]

McKee testified that around the time Rucker was suspended for 15 days for other matters, he had a long conversation with Rucker about the letter he sent to the prosecutor's office. McKee told Rucker that there was a protocol to follow and that he should follow it by taking the problem to the sergeant, the chief, or the city manager.

Although Rucker presented evidence that he reported a suspected violation of the law to a public body and he claimed that he was constructively discharged from his position shortly thereafter, there is no evidence of a causal connection between the report he made and the other disciplinary action against him. The evidence showed that McKee responded to Rucker's report merely by instructing Rucker not to take matters outside the department, which is also what the prosecutor's office told him when it responded to Rucker's report. He was simply told to report a

possible violation by another officer internally so they could be addressed. There is no evidence that defendants used the incident to impose any discipline against Rucker that could have contributed to his claim of constructive discharge. It was not cited as a reason for any of the disciplinary decisions against Rucker. Further, as explained earlier, Rucker failed to establish a question of fact whether those reasons were a pretext for retaliation.

Therefore, the trial court did not err by granting defendants' motion for summary disposition with respect to Rucker's claims.

## IV. GORBE'S CLAIMS

Gorbe, like Rucker, argued that McKee was motivated to replace older officers with younger ones, whom McKee could mold and control. At his deposition, Gorbe testified that he heard McKee say more than once that when he became the chief, he was "going to bring in my new, young fresh crew that I can control and mold." Gorbe also admitted that when he was out on medical leave, McKee and the City's human resources administrator informed him that he did not have any remaining sick leave or Family Medical Leave. But he believed that McKee and Armstrong wanted to bring him back so they could find a reason to fire him, like they did with Rucker.

Even if Gorbe could establish a prima facie claim of age discrimination on the basis of indirect evidence related to McKee's statements about wanting to replace older officers with younger ones, whom McKee could mold and control, defendants presented evidence of a legitimate, nondiscriminatory reason for terminating Gorbe's employment, namely, his failure to report for duty after his available leave was exhausted. *Major*, 316 Mich App at 543-544.

Gorbe does not dispute that he was ordered to report to work and that he was terminated when he failed to report as ordered. Thus, he cannot claim that his failure to report to work was not the actual reason why he was terminated. Further, he failed to show that this reason for terminating his employment had no basis in fact. Although he claims that he was permitted to remain off work for 18 months before he could be relieved from his position, the portion of the CBA on which he relies, Article 7, Section 1, applies to "SENIORITY/LAYOFF AND RECALL," and only refers to a leave period of 18 months as it relates to an officer's seniority rights. It provides that an employee forfeits his seniority rights when he "is unable to return to work for eighteen (18) months due to physical or mental disability." The cited provision does not otherwise provide that Gorbe was entitled to an 18-month period of leave. Conversely, Article 12, Section 6 of the CBA, which addresses sick leave, provides that sick leave beyond three days is subject to verification:

> Sick leave shall be taken only when the employee is actually disabled from working. Evidence of disability must be provided by medical certificate or other suitable proof for all sick leave granted beyond three (3) consecutive days, provided that the granting of all sick leave pay be subject to such verification as the Department Head and the Administrator may see fit to require, including examination by a physician selected by the City.

Although Gorbe's physician indicated that he should remain off work due to high blood pressure, the CBA allowed the City to condition any grant of sick leave beyond three days on verification of the need for leave by a physician selected by the City. A psychologist who examined Gorbe found that he was fit and able to return to his duties. Gorbe argues that his personal doctor was treating his physical condition, not a psychological condition, but the note from his personal doctor referred to physical manifestations of psychological problems attributed to the workplace. Even if he were being treated for physical symptoms caused by his psychological condition, such as anxiety, the City was permitted to seek verification by requesting an examination by a physician selected by the City. It did, and the psychologist found no basis for Gorbe being unable to perform his job. Moreover, Gorbe fails to address the evidence that he had exhausted his available sick leave. Accordingly, Gorbe has not established that the City's proffered reason for his termination had no basis in fact or was not the actual reason for his termination, and thus he failed to show that the reason was a pretext for discrimination.[5] Therefore, the trial court did not err by dismissing Gorbe's claim for age discrimination.

Gorbe appears to argue that his termination was not due to his failure to return to work when ordered, but was retaliation for his complaints of discrimination to the City and the EEOC. Again, the temporal proximity between the events does not support Gorbe's arguments because he was allowed to go on medical leave in March 2016, before he made his complaints about discrimination in April, May, and June 2016. Moreover, he was allowed to remain on medical leave until his leave expired, and then was examined by a psychologist at the City's request as permitted under the CBA. Despite Gorbe having filed his complaints while on leave, the City allowed him to return to work after his leave expired. It was Gorbe who refused to report as ordered. Potter, the newly appointed city manager, then handled Gorbe's case after November 7, 2016, which resulted in the termination of Gorbe's employment when he failed to report to work as ordered. Potter, who was involved in the decision to terminate Gorbe's employment, was not working for the City when Gorbe filed the earlier discrimination complaints, which mostly involved McKee. Considering this evidence, there is no causal connection between Gorbe's complaints of discrimination and the adverse employment action that was taken against him almost six months later by a new city employee. And in any event, even if the evidence established a question of fact regarding causation, Gorbe failed to show that the legitimate business reason offered by the City for Gorbe's termination was a mere pretext for retaliating against him for filing the discrimination complaints. Accordingly, the trial court did not err by dismissing Gorbe's claim of unlawful retaliation.

## V. SHARGABIAN'S CLAIMS

Although Shargabian is part of this appeal, plaintiffs have not advanced any arguments challenging the trial court's decision granting defendants summary disposition of Shargabian's claims for age discrimination and intentional infliction of emotional distress. Therefore, plaintiffs

---

[5] Although Gorbe claims that he was told by his union representative that a deal had been reached to allow him to return to work on light duty, which apparently was inaccurate, Gorbe never attempted to return to work to enforce this alleged understanding. Therefore, this argument does not compel a different result.

have abandoned any claim that the trial court erred by dismissing Shargabian's claims. *Paquin v City of St Ignace*, 504 Mich 124, 129 n 2; 934 NW2d 650 (2019); *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019).

VI. 42 USC 1983

Plaintiffs also argue that they are entitled to pursue their claim against the City for its liability under 42 USC 1983, related to its policies, customs, and practices. However, beyond referencing the claims already discussed, plaintiffs do not explain how the City may be liable under 42 USC 1983.

A person is liable under 42 USC 1983 if he or she, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." A municipality may be held liable under 42 USC 1983 for maintaining unconstitutional policies. *Johnson v VanderKooi*, 502 Mich 751, 762; 918 NW2d 785 (2018). As explained in *Johnson*, "Establishing municipal liability under 42 USC 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality." *Id.*

> A constitutional violation is attributable to a municipality if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Liability may also be based on a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels, if the relevant practice is so widespread as to have the force of law. However, liability may not be based on a respondeat superior theory. If the claim is premised on a municipal action that is itself alleged to be unlawful, . . . no independent assessment of municipal culpability is necessary. If, however, a plaintiff does not claim that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, then it must be shown that the municipality acted with deliberate indifference to the obvious risk that the failure to take a different course of action would cause the specific kind of injury alleged. Under either theory of liability, a plaintiff must also establish an affirmative link between the policy or custom and the particular constitutional violation alleged. Stated differently, the policy or custom must be the moving force behind the alleged constitutional violation. [*Id.* at 762-763 (quotation marks and citations omitted).]

Plaintiffs have not offered any argument or identified any evidence in support of their assertion that the City may be separately liable under 42 USC 1983 for any individual claims alleged in this matter. Furthermore, the federal court dismissed plaintiffs' claim for "violation of the First Amendment and retaliation and retaliatory discharge," which included allegations that defendants were liable under 42 USC 1983. Because the federal action was decided on the merits and involved the same parties, res judicata bars plaintiffs from pursuing any claims under 42 USC 1983 in this state action. See *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999).

Affirmed.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel